**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------x

TAYLOR MOODY,

    Plaintiff,

                 -against-

FIRST CHOICE STAFFING, INC.

                 -and-

NOVELIS CORPORATION

    Defendants,

-------------------------------------------------------------------------x

NO. 5:26-cv-151 (GTS/MJK)

CIVIL ACTION

JURY TRIAL DEMANDED

**COMPLAINT**

    Plaintiff, by and through undersigned counsel, hereby makes the following Complaint against Defendants and in support thereof avers as follows:

## INTRODUCTION

1.    This is an action brought by Plaintiff, a former employee, against Defendants for unlawful violations of the Americans with Disabilities Act ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA"), the Family and Medical Leave Act ("FMLA") and the New York Human Rights Law ("NYSHRL").

## JURISDICTION AND VENUE

2.    Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

3.    This Court has jurisdiction over this matter under 28 U.S.C. § 1331 because this action arises under federal law.

4.    Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in this district and Defendant conducts business here.

5.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

## **PARTIES**

6.    Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

7.    Plaintiff Taylor Moody is an adult individual who resides in Oswego, NY and is otherwise a citizen of the State of New York.

8.    At all relevant times, Plaintiff was an "employee" of each Defendant within the meaning of the federal and state law as pleaded herein.

9.    Defendant First Choice Staffing ("FCS") is, upon information and belief, incorporated under the laws of the State of New York and maintains its principal place of business at 7525 Morgan Road, Liverpool, New York 13090. FCS is therefore a citizen of the State of New York within the meaning of 28 U.S.C. § 1332. [1]

10.    Defendant Novelis Corporation ("Novelis") is a Texas corporation and, upon information and belief, is a citizen of Texas within the meaning of 28 U.S.C. § 1332. Novelis is registered to do business in New York State and operates in whole or in part in Oswego, New York.

---

[1]Upon information and belief, FCS may be owned, operated and/or controlled by another entity, First Choice Group CNY, Inc. with the same registered principal place of business at 7525 Morgan Road, Liverpool, New York 13090.

11.     At all times relevant hereto, each Defendant acted by and through its duly authorized agents, servants, employees, and/or representatives, each of whom was acting within the course and scope of his or her actual or apparent authority, agency, and employment, and whose acts and omissions are legally attributable to each Defendant.

12.     At all relevant times, Defendants were Plaintiff's employers within the meaning of the statutes pleaded herein and acted as joint employers with respect to Plaintiff's employment.

13.     Upon information and belief, Defendants shared and/or co-determined the essential terms and conditions of Plaintiff's employment, including but not limited to hiring, firing, discipline, supervision, scheduling, compensation, job duties, performance evaluation, and workplace policies.

14.     Upon information and belief, Defendants jointly exercised control over Plaintiff's work and employment conditions such that they functioned as a single and/or joint employer for purposes of liability under federal law.

<u>**ADMINISTRATIVE REMEDIES**</u>

15.     Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

16.     On or about April 18, 2025, Plaintiff filed separate Charges of Discrimination against each Defendant with the Equal Employment Opportunity Commission ("EEOC") alleging violations of the ADAAA.

17.     On January 23, 2026, the EEOC issued a Notice of Right to Sue letter to Plaintiff with respect to the charge against FCS.

18.     On January 23, 2026, the EEOC issued a Notice of Right to Sue letter to Plaintiff with respect to the charge against FCS.

19.    On January 23, 2026, the EEOC issued a Notice of Right to Sue letter to Plaintiff with respect to the charge against Novelis.

20.    Plaintiff exhausted administrative remedies with respect to his federal anti-discrimination claims in this action.

## FACTUAL ALLEGATIONS

21.    Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

22.    Plaintiff is an adult male who suffers from disabilities including epilepsy and anxiety disorders, which he manages with appropriate medication.

23.    Plaintiff was a good performing employee and could perform all of the essential functions of his job with reasonable accommodation.

24.    Plaintiff was assigned to work for Novelis by FCS insofar as FCS is a staffing agency.

25.    At all times relevant to the allegations made herein, both FCS and Novelis were made aware of Plaintiff's disabilities.

26.    On or about October 17, 2023, Plaintiff was assigned to a position as a Front Desk Associate at Novelis' off campus wellness center.

27.    Approximately three ("3") months into his employment, Plaintiff suffered a seizure *off site* and took several days off from work.

28.    In 2024, Plaintiff had other episodes relative to his disability:

    a)    On or about June 13, 2024, Plaintiff had to call out of work due to a panic attack that would lead to a seizure;

    b)    On or about September 4, 2024, Plaintiff called out after a poor night's sleep which in his experience was a trigger for seizures;

c) On or about October 7, 2024, Plaintiff suffered multiple panic attacks at work and left around noon;

d) On or about October 15, 2024, Plaintiff called out after experiencing several panic attacks early in the morning;

e) On or about December 16, 2024, Plaintiff called out due to panic attacks that he reasonably believed could escalate into a seizure.

29.     In total and upon information and belief, Plaintiff called out approximately six ("6") times for symptoms directly related to his disabilities.

30.     Plaintiff was never informed either by Novelis or FCS that he could request leave under federal or state law, including but not limited to the FMLA, which he likely would have been eligible for by October 13, 2024.[2]

31.     On or about January 13, 2025, Plaintiff suffered a seizure at work for the first time which occurred after accidently missing a dose of his prescribed medication.

32.     Plaintiff was out of work for several days because of the January 13, 2025 seizure.

33.     On or about March 18, 2025, Plaintiff had another seizure at work despite adhering to his medication regimen.

34.     Plaintiff texted Karen Nabinger ("Nabinger") of FCS the same day to inform her that was 1.) going home and 2.) that he had been evaluated by a medical professional who cleared him to return to work.

35.     Nabinger responded the next day but did not advise Plaintiff that could take FMLA leave and/or request a medical leave of absence separate and aside from PTO.

---

[2] *See e.g.* 29 C.F.R. §825.110(a) (defining an eligible employee); 29 CFR § 825.106 (explaining joint employer coverage is available under the FMLA).

36.     On or about March 20, 2025, Plaintiff sent Nabinger a doctor's note that had excused him from work through March 19, 2025.

37.     On or about March 26, 2025, Plaintiff was placed on indefinite unpaid suspension, resulting in a *de facto* termination.[3]

38.     FCS issued a letter stating that Novelis' on-site nurse practitioner, Deanna Grimshaw ("Grimshaw"), advised that Plaintiff could no longer work alone at the wellness center due to concerns about his seizures and safety.

39.     FCS claimed that working alone was an "essential function" of Plaintiff's role.

40.     The letter also incorrectly stated that Plaintiff told FCS his medical provider restricted him from working alone for six months.

41.     In truth, no such note was ever provided by Plaintiff's provider, and to Plaintiff's knowledge, neither FCS nor NC contacted his provider to initiate the interactive process.

42.     Plaintiff's medical provider did not issue any restriction prohibiting him from working alone.

43.     The provider merely indicated that, ideally, Plaintiff would not work alone—a suggestion, not a limitation and in any event an obvious invitation to begin the interactive process.

44.     Upon information and belief, Novelis and/or its nurse practitioner made a unilateral determination regarding Plaintiff's ability to work, potentially stepping beyond the scope of their authority.

---

[3] *See e.g.* Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001) (holding that suspension without pay for one week was sufficient to constitute adverse employment action even if the plaintiff was later reimbursed); Page v. Conn. Dep't of Pub. Safety, 185 F. Supp. 2d 149, 157 (D. Conn. 2002) ("In this Circuit, suspension without pay constitutes adverse employment action.")

45.     At no point did FCS or Novelis engage in any meaningful interactive process with Plaintiff.

46.     FCS claimed in its letter that it had "endeavored" to adjust staff schedules so that Plaintiff would not be working alone, but those efforts (if they even occurred) were neither communicated to Plaintiff nor successful.

47.     FCS further stated that it would not be feasible to hire an additional employee to be present with Plaintiff at all times, which was not even an accommodation he requested.

48.     On or about March 27, 2025, after learning of his unpaid suspension, Plaintiff texted Nabinger asking how much PTO he had.

49.     She responded that Plaintiff had to be "actively working" to use PTO but that she would try to get approval for PTO to cover his absences.

50.     On or about April 1, 2025, she told Plaintiff that he had 37 hours of PTO remaining, but reiterated that he could not use it until he returned to work.

51.     Plaintiff's unpaid suspension and *de facto* termination constitute unlawful discrimination under the Americans with Disabilities Act ("ADA").

52.     Plaintiff was not in a safety-sensitive position and was never restricted from working alone by his own provider.

53.     Defendants collectively failed to engage in the required interactive process, failed to accommodate Plaintiff's disability, and retaliated against him for needing a reasonable amount of time off due to his disability.

54.     Instead of working with Plaintiff in good faith, Defendant(s) made a unilateral decision to remove him from work based on unfounded assumptions and without contacting his medical provider.

## COUNT I
### Violations of the ADAAA
### 42. U.S.C. § 12101 *et seq.*
### (Disability Discrimination)
### *Against All Defendants*

55.     Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

56.     Plaintiff is a qualified individual with a disability within the meaning of the ADA, as amended by the ADA Amendments Act of 2008.

57.     At all relevant times, Plaintiff was able to perform the essential functions of his position, with or without reasonable accommodation.

58.     Defendants were aware of Plaintiff's disabilities and/or regarded Plaintiff as having a disability within the meaning of the ADA.

59.     Defendants subjected Plaintiff to adverse employment actions, including but not limited to placing him on an unpaid suspension and terminating his employment.

60.     Defendants' actions were taken because of Plaintiff's disabilities and/or perceived disabilities.

61.     Defendants relied on unfounded assumptions, stereotypes, and generalized safety concerns rather than an individualized assessment of Plaintiff's ability to perform his job.

62.     Defendants' conduct constitutes unlawful discrimination in violation of the ADA.

63.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered damages including lost wages, lost benefits, emotional distress, and other compensable harms.

## COUNT II
### Violations of the ADAAA
### 42. U.S.C. § 12101 *et seq.*
### (Failure to Accommodate / Failure to Engage in Interactive Process)
### *Against All Defendants*

64.    Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

65.    Plaintiff required reasonable accommodations related to his disabilities, including limited, disability-related time off and engagement in an interactive process regarding any perceived safety concerns.

66.    Plaintiff did not request to be removed from work, suspended, or terminated.

67.    Defendants failed to engage in a timely, good-faith, and meaningful interactive process with Plaintiff.

68.    Defendants failed to contact Plaintiff's medical provider or otherwise seek clarification regarding Plaintiff's work capabilities or potential accommodations.

69.    Defendants unilaterally determined that Plaintiff could not perform his job and that working alone was an essential function, without exploring reasonable accommodations.

70.    Defendants' failure to engage in the interactive process and failure to provide reasonable accommodations violated the ADA.

71.    As a result, Plaintiff suffered damages as alleged herein.

## COUNT III
**Violations of the ADAAA**
**42. U.S.C. § 12101 *et seq.***
**(Retaliation)**
***Against All Defendants***

72.    Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

73.    Plaintiff engaged in protected activity by, among other things, disclosing his disabilities, requesting and taking disability-related leave, and seeking to continue working following medical episodes.

74.     Defendants were aware of Plaintiff's protected activity.

75.     Defendants subjected Plaintiff to adverse employment actions, including unpaid suspension and termination.

76.     There is a causal connection between Plaintiff's protected activity and the adverse employment actions.

77.     Defendants' conduct constitutes unlawful retaliation in violation of the ADA.

**<u>COUNT IV</u>**
**Violations of the FMLA**
**29 U.S.C. §2601 *et seq*.**
**(Interference and/or Retaliation)**
***Against All Defendants***

78.     Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

79.     Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

80.     Plaintiff was an eligible employee under the FMLA.

81.     Defendants were covered employers under the FMLA.

82.     Plaintiff suffered from a serious health condition within the meaning of the FMLA.

83.     Plaintiff was entitled to take leave under the FMLA.

84.     Defendants failed to advise Plaintiff of his rights under the FMLA, including his right to take protected medical leave.

85.     Defendants failed to designate Plaintiff's disability-related absences as FMLA leave.

86.     Defendants interfered with, restrained, and denied Plaintiff's exercise or attempted exercise of rights protected by the FMLA. This also includes, but is not limited to, Defendants' failure to restore Plaintiff to his position.

87.     Defendants' conduct violated 29 U.S.C. § 2615(a)(1).

88.     Additionally, and/or in the alternative pursuant Fed.R.Civ.P. 8(d)(2), Plaintiff engaged in protected activity under the FMLA by taking leave for a serious health condition and by notifying Defendants of the need for such leave.

89.     Defendants were aware of Plaintiff's protected activity.

90.     Defendants subjected Plaintiff to adverse employment actions, including unpaid suspension and termination.

91.     Defendants' actions were causally related to Plaintiff's protected activity.

92.     Defendants' conduct violated 29 U.S.C. § 2615(a)(2).

93.     As a result, Plaintiff suffered damages including lost wages, benefits, and other compensation.

<u>**COUNT V**</u>
**Parallel Violations of the NYSHRL[4]**
**N.Y. Exec. Law § 296**
***Against All Defendants***

94.     Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

95.     The conduct alleged above to be violative of the ADAAA also violates NYSHRL.

96.     Defendants discriminated against Plaintiff because of his disabilities and/or perceived disabilities.

97.     Defendants failed to provide reasonable accommodations and failed to engage in a cooperative dialogue as required by New York law.

98.     Defendants retaliated against Plaintiff for engaging in protected activity.

---

[4] *See e.g.* <u>Williams v. City of New York</u>, 121 F. Supp. 3d 354, 364, n. 10 (S.D.N.Y. Aug. 5, 2015) ("[p]rotections afforded by the NYSHRL are construed coextensively with the ADA" and Section 504 of the RA)

99.     Defendants' conduct violated the New York State Human Rights Law, N.Y. Exec. Law § 296.

100.    Plaintiff suffered damages as a result of Defendants' unlawful conduct.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant and award:

a)      Reinstatement to Plaintiff's former position or, alternatively, front pay in lieu of reinstatement;

b)      Back pay, including lost wages, benefits, and other remuneration;

c)      Compensatory damages for emotional distress and other non-economic harms to the extent available as a matter of law;

d)      Reasonable attorney's fees and costs as a prevailing party under federal and state law;

e)      Punitive and/or liquidated damages as applicable and to the extent available as a matter of law, to deter Defendant and others from engaging in similar unlawful conduct;

f)      Pre-judgment and post-judgment interest as allowed by law; and

g)      Such other relief as the Court deems just and proper.

h)      Plaintiff demands a trial by jury on all issues so triable pursuant to Fed.R.Civ.P. 38.

Respectfully submitted,

SIPIO LAW P.C.

/s/ W. Charles Sipio
W. Charles Sipio, Esq.
100 Overlook Center, 2nd Floor
Princeton, NJ 08540
(T) 609-454-6799 / (D) 609-251-4119
charles@sipiolaw.com

*Attorneys for Plaintiff*

Dated: January 29, 2026